IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD K. ROGERS** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:17cv118-HSO-RHW** |
| | § | |
| | § | |
| **MEDLINE INDUSTRIES, INC., AND** | § | |
| **JOHN DOES 1-5** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT MEDLINE INDUSTRIES, INC.'S
MOTION [55] FOR SUMMARY JUDGMENT AND DISMISSING
PLAINTIFF'S CLAIM FOR DISPARATE-IMPACT DISCRIMINATION**

BEFORE THE COURT is Defendant Medline Industries, Inc.'s Motion [55]

for Summary Judgment. Plaintiff Richard K. Rogers alleges Defendant

discriminated against him based on his age when it terminated his employment.

After due consideration of the record, Defendant's Motion, and relevant legal

authority, the Court is of the opinion that Defendant's Motion [55] for Summary

Judgment should be granted in part and denied in part. Defendant Medline

Industries, Inc., is entitled to judgment as a matter of law as to the disparate-

impact age discrimination claim asserted against it by Plaintiff Richard K. Rogers.

Plaintiff's disparate-treatment claim should proceed.

# I. BACKGROUND

## A. Factual background

Plaintiff Richard K. Rogers ("Rogers" or "Plaintiff") began his employment with Medline Industries, Inc. ("Medline" or "Defendant") in 2002 as a salesperson. Compl. [1] at 2. After Medline terminated Rogers in July of 2016, Plaintiff timely filed a Charge of Discrimination [1-1] with the Equal Employment Opportunity Commission ("EEOC"), alleging that Medline discriminated against him on the basis of his age. Compl. [1] at 2. The EEOC provided Rogers with a Notice of Right to Sue [1-2], and Rogers timely filed suit against Medline Industries, Inc. and John Does 1-10. Compl. [1] at 1. Rogers alleges that Medline unlawfully terminated him from employment because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. *Id.* at 4.

Construing all facts in Rogers' favor, at the time of his termination Rogers held the position of Acute Care Manager, a specialty sales position. Compl. [1] at 2; Briggs Decl. [55-3] ¶ 6. Rogers worked in direct sales and managed client accounts. *Id.* Each year during Rogers' employment Medline set sales quotas for salespersons, which it calculated using the base revenue of the accounts assigned to the salesperson from the prior year plus a percentage growth expectation. Def.'s Mem. [56] at 4; *see* Rogers Dep. [55-2]. Medline also incentivized its salespersons with what it called a "STAR incentive plan" under which salespersons could be rewarded each year with a trip based upon their level of sales of certain Medline products. *Id.*

Mark Taylor, who served as a Senior Vice President for Medline, hired Rogers in 2002. Taylor Decl. [55-9] ¶ 2. Until approximately 2013, Claude "Trey" Smith directly managed him. Pl.'s Resp. Mem. [70] at 5; Smith Dep. [69-2]. According to Taylor and Smith, while he was under their management Rogers met their expectations and was not the subject of any customer complaints, with the exception of one complaint that Smith attributed to a customer's last-minute ordering of a product. *Id.* at 6; Taylor Aff. [69-3] ¶¶ 6-7; Smith Depo. [69-2] at 14-16. Medline subsequently demoted both Taylor and Smith, Halberg Decl. [55-1] ¶¶ 4-5, and in 2013, assigned Andrew Briggs as Rogers' Division Manager, Pl.'s Resp. Mem. [70] at 7; Rogers Dep. [55-2] at 119. About this time, Medline also assigned Mark Gallarelli as Senior Vice President of Sales for the Southeast, replacing Taylor. Pl.'s Resp. Mem. [70] at 7; Def.'s Mem. [56] at 4-5. Until the end of Rogers' employment, Briggs served as his direct manager, and Gallarelli served as Briggs' immediate supervisor managing the entire Southeast region for Medline. Pl.'s Resp. Mem. [70] at 7; Def.'s Mem. [56] at 4-5; Rogers Dep. [55-2] at 119.

At the time Briggs was appointed Division Manager in 2013, he reviewed the sales records of all salespersons under his management. Briggs Decl. [55-3] ¶¶ 17-18. He noted and discussed with Rogers his failure to meet his sales quota in 2012, *id.* ¶¶ 19-20, and then worked with Rogers to meet quota, *id.* ¶ 20. It is undisputed that Rogers never met Medline's established sales quotas from 2012 until the date of his termination in 2016. In 2012, Rogers achieved 88.8% of his sales quota. Ex. "A" [55-1] at 43-44. In 2013, he achieved 91.7% of his sales quota, and in 2014, he

achieved 80.3% of his sales quota. *Id.* In 2015, the year prior to his termination, Rogers achieved 99.2% of his sales quota. *Id.*

In 2013, soon after Gallarelli was assigned as the Senior Vice President for Sales, Rogers attended a promotional meeting at which Gallarelli was present. Rogers Dep. [55-2] at 198-200. As Rogers was walking into the meeting, Gallarelli remarked, "I didn't know you were 50 something years old," and added, "[y]ou don't really look that old; you're older than me." *Id.* Medline had in place a procedure for reporting complaints of discrimination and a policy of instructing employees that they should report any incident of discrimination or harassment. Halberg Decl. [55-1]. Rogers had received a copy of Medline's policies and procedures for reporting discrimination during his employment with the company. Rogers Dep. [55-2] at 111-13. He did not complain about Gallarelli's comment, or of any other comment or conduct while employed by Medline. *Id.* at 114.

In January 2016, Gallarelli sent an email to Jim Boyle, Medline's Senior Vice President for Acute Sales, Katie Halberg, Medline's Human Resources Director, and Briggs, noting that Rogers was not currently on a corrective action plan and that they were waiting for the 2015 numbers to be released to place him on one. Ex. "E" [69-5]; Halberg Decl. [55-2] ¶ 3. After Rogers did not meet his 2015 quota, on March 11, 2016, Medline presented Rogers with a Corrective Action Form, setting out a ninety-day plan "to assist [Rogers] in improving [his] performance . . . ." Ex. "S" [69-19].

The corrective action plan, drafted by Briggs, indicated that Rogers failed to

respond when in late 2015, Briggs asked him what his plan was to make quota for that year. *Id.* at 1. Briggs noted that Rogers had failed to achieve quota for the past five years, had only achieved STAR for two of those years, and had not met his month-to-date quotas for January or February 2016.[1] *Id.* Briggs also added that he had received a number of customer complaints that Rogers "lack[ed] product knowledge and [demonstrated an] unwillingness to ask the right questions," and did not have a "sense of urgency to handling problems when they ar[o]se."[2] *Id.* According to Briggs, Rogers did not follow up, complete projects in a timely manner, attain goals, or actively engage in presented opportunities. *Id.* The plan set quota and STAR targets for Rogers to achieve and required him to complete, "without exception," weekly summaries and gain/loss updates, to receive zero customer complaints, and to reply to emails within twenty-four hours. *Id.* Rogers acknowledged that he received a copy of the plan and that it was clearly communicated to him. *Id.*

Before he was placed on corrective action, Rogers had secured a prime vendor contract with Memorial Hospital of Gulfport, Mississippi, which would make Medline the Hospital's supplier for medical supplies. Def.'s Mem. [56] at 8. On March 17, 2016, Briggs sent an email to David Mimms, the Director of Materials

---

[1] To the extent Rogers' Response [69] [70] can be construed to object to the plan as hearsay, the Court finds that it falls within the business records exception. *See.* Fed. R. Evid. 803(6).

[2] Briggs states in his Declaration [55-3] that several customers expressed concerns regarding the level of Rogers' service, and he specifically references a verbal complaint made by Biloxi Regional Hospital as well as an email from Natchez Hospital, which was dated after Rogers' termination. Briggs Decl. [55-3] ¶¶ 23-26. To the extent Medline offers these statements for the truth of the matters asserted, i.e. the complaints themselves, they are hearsay and the Court has not considered them in resolving this Motion [55]. They may, however, be considered as evidence of what Medline was told.

Management for Memorial Hospital, which included an email chain to Rogers outlining the procedure Rogers should use throughout Memorial's prime vendor conversion process.[3] Ex. "D" [69-4]; Ex. "AA" [69-27]. Briggs indicated that he was committed to keeping Mimms "in the know" and added: "Please let me know anytime you feel that something can be improved upon and I will get right on it." Ex. "AA" [69-27]. Mimms responded:

> I have told [Rogers] not to give me the standard answer, I need him to work toward being my voice with Medline. I never got 'no' from Hunter [Russum] he [sic] always said 'I'll see what I can do'. And for the most part he came back with some sort of answer or compromise. I need that from [Rogers].

*Id.*[4] Briggs replied that he was "working on that." *Id.*

Although Rogers secured the prime vendor contract with Memorial Hospital at the beginning of 2016, he was unable to implement it by the expiration of the corrective action plan. Pl.'s Resp. Mem. [70] at 9. Briggs discussed with Katie Halberg, Medline's Human Resources Director, Rogers' failure to meet the corrective action plan's expectations. Ex. "I" [69-9] at 1. In an email to Gallarelli,

---

[3] While Rogers has objected to a number of statements in Halberg's Declaration [55-1], he has not objected to this e-mail or Halberg's corresponding inclusion of a portion of the e-mail within the Declaration. Halberg Decl. [55-1] ¶ 44; *see* Pl.'s Resp. Mem. [70] at 27-28; Pl.'s Mot. [66]; Pl.'s Reply [80]. In fact, Rogers relies on the e-mail in his own Reply, arguing that the Court should infer that Mimms requested Rogers to continue as his liaison. Pl.'s Resp. Mem. [70] at 27-28. Despite this failure to object, the e-mails constitute hearsay. However, the e-mails are capable of being presented in admissible form at trial. *See* Fed. R. Civ. P. 56. Mimms confirmed in his July 13, 2018, Declaration [55-10] that he "expressed concerns to Mr. Briggs about the service Mr. Rogers was providing to Memorial in implementing the prime vendor agreement, particularly as compared to my prior experience with Mr. Russum." Mimms Decl. [55-10] ¶ 9. Mimms went on to describe the portions of Russum's conduct he liked and that he felt Rogers "was not as willing to seek creative or compromise solutions." *Id.* ¶ 10. § 10. Even if the Court were to consider only Mimms' Declaration [55-10] and not Halberg's, it would not change the result here.
[4] After Rogers' termination, Medline replaced Rogers with Russum on the prime vendor account with Memorial. Mimms Decl. [55-10] ¶ 13.

Briggs explained that, given Rogers' performance under the plan and Rogers' father's health issues, Halberg recommended that they extend the plan. *Id.* Briggs noted that he had failed to document the meetings he had with Rogers regarding his performance. *Id.*

On June 14, 2016, Medline extended the corrective action plan an additional sixty days under similar terms, requiring updates and zero customer complaints. Rogers' Dep. [55-2] at 177-78; Ex. "A" [55-1] at 53-54; Pl.'s Resp. Mem. [70] at 10. Subsequently, on June 29, approximately three months after Mimms first expressed concerns regarding Rogers' service, Briggs approached Mimms regarding his working relationship with Rogers. Mimms Decl. [55-10] ¶¶ 11-13; Mimms Decl. [69-4] ¶ 9. Mimms indicated that he felt that there was "room for improvement for [Rogers]." Mimms Decl. [69-4] ¶ 9. Specifically, Mimms "expressed concerns about Mr. Rogers' [sic] following up and following through with issues concerning implementation of the prime vendor agreement." Mimms Decl. [55-10] ¶ 12; Mimms Decl. [69-4] ¶ 9 (indicating Mimms believed there was "room for improvement" regarding "follow-up and follow through"). Mimms, however, did not specifically request that Rogers be terminated as Memorial's sales representative on the prime vendor account. Mimms. Decl. [55-8] ¶ 12.

Following this conversation, Briggs e-mailed Halberg regarding the meeting.[5]

---

[5] Rogers argues that Briggs' e-mail is hearsay and not competent summary judgment evidence. Pl.'s Resp. Mem. [70] at 10. To the extent it is offered to prove the truth of the matter asserted, it is hearsay. *See* Fed. R. Evid. 805. Nonetheless, Medline claims it is offered only as evidence of Medline's good faith belief regarding Plaintiff's poor customer service. Def.'s Resp. [76] at 9. To the extent Medline offers Briggs' email for the truth of the matter asserted, the Court does not consider it. Mimms' Declarations [55-10] [69-4] are sufficient on their own. *See* Mimms Decl. [55-10]; Mimms Decl. [69-4]. Moreover, although the Court need not consider the e-mail itself, Medline has shown

7

Ex. "A" [55-1] at 55.  Briggs related that Rogers took a week to respond to requests for quotes, failed to provide quotes in the requested format, and lacked visibility. *Id.*  Briggs indicated that the account with Memorial required a "responsive rep with good communication skills" to handle the breakdowns that Mimms had expressed to Briggs.  *Id.*  Briggs ended the e-mail indicating that he was "not sure where [to] go from here in terms of the length of time to keep [Rogers] employed." *Id.*

On June 28, 2016, Briggs set up one-on-one phone calls with his sales associates.  Ex. "A" [55-1] at 57.  On June 30, Briggs sent out a final schedule and reminder.  *Id.* at 56.  Briggs scheduled Rogers' call for 11:30 am on July 8, 2016.  *Id.* On the scheduled date, Briggs e-mailed his sales representatives reminding them of the calls.  *Id.* at 59.  Eleven minutes after Rogers' scheduled date and call time, Briggs e-mailed Halberg indicating that Rogers was the only representative who did not respond to the invitation.  *Id.* at 56.  He stated: "I'm done and wanting to know what to do next for proceeding with termination."  *Id.*; Pl.'s Resp. Mem. [70] at 10-11.

Medline terminated Rogers' employment effective July 31, 2016.  Rogers Dep. [55-2] at 107; Ex. "U" [69-21].   The Termination Summary, drafted by Briggs, indicates that Rogers was terminated for substandard performance.  Ex. "U" [69-21].  It states that multiple staff at Memorial Hospital voiced concerns and dissatisfaction with Rogers' performance and that Rogers failed to attend the one-

through Mimms' Declarations that it is capable of producing this evidence in an admissible form. *See* Mimms Decl. [55-10]; Mimms Decl. [69-4].

on-one call with Briggs. *Id.* It concluded: "As a result of failure to meet the corrective action goals along with continued customer complaints and failure to meet deadlines, [Rogers'] employment with Medline Industries, Inc. will be terminated." *Id.*

B.    Procedural background

Plaintiff timely filed a Charge of Discrimination [1-1] with the Equal Employment Opportunity Commission ("EEOC") alleging that Medline discriminated against him on the basis of his age when it terminated him.   Compl. [1] at 2.  After the EEOC provided Rogers with a Notice of Right to Sue [1-2], he filed suit against Medline Industries, Inc. and John Does 1-10 raising disparate-treatment and disparate-impact claims of age discrimination in violation of the ADEA. *Id.* at 1.

Medline has now filed the instant Motion [55] for Summary Judgment asserting that there are no disputed issues of material fact and that it is entitled to summary judgment on Rogers' claims.  Mot. [55] for Summ. J. at 1.  Medline argues that Rogers has failed to present direct evidence of age discrimination, Def.'s Mem. [56] at 13-14, and that Rogers cannot demonstrate that he was terminated but for his age, *id.* at 1-2.  According to Medline, Rogers also cannot show that its reasons for termination were pretextual, and he failed to exhaust the requisite administrative remedies regarding any claims of disparate impact. *Id.*  In the alternative, Rogers cannot meet his burden to prove a policy or practice of Medline had a disproportionate impact on members of his protected class. *Id.*; Def.'s Mem.

[56] at 23-25.

Rogers' Response [69] asserts that he has presented both direct and circumstantial evidence that Medline terminated him because of his age. Pl's Resp. Mem. [70] at 35. Plaintiff asserts that the comment by Gallarelli serves as direct evidence of discrimination, and that Medline's proffered nondiscriminatory reasons for his termination are mere pretext which lack support. *Id.* at 15-18. Rogers points to evidence that Medline requested feedback regarding Rogers' performance, that Rogers had no complaints or history of unsatisfactory performance before 2014, and that the sole cited customer complaint was solicited. *Id.* at 18-28. In its Reply [74], Medline reiterates that Rogers has not rebutted its legitimate, nondiscriminatory reasons for his termination. Def.'s Reply [74] at 5-12. Medline also asserts that Rogers has abandoned his disparate-impact claim. *Id.* at 12-13.

Defendant has submitted three Declarations as exhibits in support of its Motion [55] for Summary Judgment: (1) Exhibit "A" [55-1], Decl. of Katie Halberg; (2) Exhibit "C" [55-3], Decl. of Andrew Briggs; and (3) Exhibit "E" [55-5], Decl. of Mark Gallarelli. Rogers filed three separate, two-page Motions [66] [67] [68], seeking to strike portions of each Declaration [55-1] [55-3] [55-5], and arguing that they amounted to inadmissible hearsay or legal conclusions which are not competent summary judgment evidence. Pl.'s Mot. [66] Strike at 1; Pl.'s Mot. [67] Strike at 1; Pl.'s Mot. [68] Strike at 1. The Court previously issued an Order [47] Denying Plaintiff's Motions [66] [67] [68]; however, it will not consider any portions of the Declarations that cannot be presented in a form admissible in evidence, nor

will it consider any other evidence that is plainly inadmissible, in resolving

Defendant's Motion [55] for Summary Judgment.

## II. <u>DISCUSSION</u>

### A. <u>Summary judgment standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.    Plaintiff's ADEA claims

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment, because of the individual's age."  29 U.S.C. § 623(a).   The Complaint [1] advances two distinct theories of liability under the ADEA, disparate treatment and disparate impact.  Compl. [1].  ¶¶ 25-26.  The ADEA creates a federal cause of action for both theories of discrimination.  *Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005).  In the context of age discrimination, disparate treatment occurs where an employer treats an employee over the age of forty less favorably because of their age.  *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  Disparate-impact claims, by contrast, involve "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on [persons over the age of forty]." *Id.*  The Court will address each theory in turn.

C.    Plaintiff's disparate-impact claim

Where an employee alleges disparate-impact discrimination, the employee must show that the employer had "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006).  "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith*, 544 U.S. at 241.  Instead, the employee is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for

any observed statistical disparities." *Id.* (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)).

Medline contends that Rogers failed to exhaust his administrative remedies regarding his disparate-impact claim because he failed to allege any facts from which a disparate-impact investigation could reasonably "have been expected to grow," and that he "cannot meet his prima facie burden to prove any Medline policy or practice had a disproportionate impact on members of his protected class." Def.'s Mem. [56] at 25. Rogers' Response [70] makes no attempt to rest his case on an assertion of disparate impact, or to respond to Medline's arguments. Pl.'s Resp. Mem. [70] at 35 n.13; *see* Def.'s Reply [74] at 12-13; *see generally* Pl.'s Resp. Mem. [70]. In fact, Rogers states in the final footnote of his Response [70] that "[he] is not traveling under a disparate impact theory." Pl.'s Resp. [70] at 35 n.13. Medline asserts in its Reply [74] that Rogers has abandoned his disparate-impact claim. Def.'s Reply [74] at 12-13.

The Court finds that Rogers has abandoned his claim of disparate impact. However, even considering Rogers' claim of disparate impact, the Court finds that summary judgment is warranted because Rogers has not carried his prima facie burden. Rogers has not identified or isolated any neutral employment policy to form the basis of such a claim. *See Smith*, 544 U.S. at 241; Pl.'s Compl. [1]; Pl.'s Resp. [69]; Pl.'s Resp. Mem. [70]. Summary judgment on Rogers' disparate-impact claim is appropriate.

D.   Plaintiff's disparate-treatment claim

"[U]nder the plain language of the ADEA, [ ] a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).  "But-for" cause is "[t]he cause without which the event could not have occurred," *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (quoting CAUSE, Black's Law Dictionary (10th ed. 2014)), but it "does not mean 'sole cause,'" *id.*

To withstand an employer's motion for summary judgment, a plaintiff must present sufficient direct or circumstantial evidence to create a genuine issue of fact that he was discriminated against by his employer because of his age.  *See Gross*, 557 U.S. at 177-78 ("A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.").   Here, Rogers claims he can establish through both direct and circumstantial evidence that Medline discriminated against him.

1.   Direct evidence of discrimination

A plaintiff submits direct evidence of discrimination where the evidence, if believed, is such that "a rational trier of fact could conclude that age played a role in [the employer's] decision to terminate [plaintiff]." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2013) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 205, 315-16 (5th Cir. 2004)).

Rogers relies upon the comment made by his supervisor, Mark Gallarelli, at a sales meeting in 2013 as direct evidence of age discrimination.  Pl.'s Resp. Mem.

[70] at 12-15; Rogers Dep. [55-2] at 198-200.  According to Rogers, at the meeting Gallarelli stated: "I didn't know you were fifty something years old . . . You don't look that old; you're older than me."  Rogers Dep. [55-2] at 198.  It is undisputed that this is the only comment Gallarelli or anyone else from Medline ever made to Rogers concerning his age.  *Id.* at 200.  The parties, however, dispute whether this comment is sufficient to constitute direct evidence of age discrimination.  Def.'s Mem. [56] at 12-15; Pl.'s Resp. Mem. [70] at 15-18.

The Fifth Circuit distinguishes between workplace comments presented as direct evidence of discrimination and those that are presented as circumstantial evidence.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).  "'[S]tray remarks' do not demonstrate age discrimination" and cannot constitute direct evidence.  *EEOC v. Tx. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).  "In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Id.* (citation removed).

Where a plaintiff offers comments as direct evidence, courts apply a four-part test to determine "whether they are sufficient to overcome summary judgment."  *Id.* (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).  In *Brown v. CSC Logic, Inc.*, the Fifth Circuit held that "[r]emarks may serve as sufficient [direct] evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over

the employment decision at issue; and 4) related to the employment decision at issue." 82 F.3d at 655.

Medline argues that Gallarelli's comment was merely a "stray remark" that cannot serve as direct evidence of age discrimination. Def.'s Mem. [56] at 14-15. It asserts that the comment was not related to Rogers' employment or its decision to terminate him, was too remote in time, and was neither direct nor unambiguous. Def.'s Mem. [56] at 15-16.

Here, Gallarelli's comment by itself that "[he] did not know [Rogers was] fifty something years old" and was "older than [him]," Rogers Dep. [55-2] at 198-200, is not sufficiently "probative of [Medline's] discriminatory intent" to support a direct evidence theory of discrimination, *Tx. Instruments*, 100 F.3d at 1181. Although the comment was made by Gallarelli, an individual with authority over Rogers, and was related to Rogers' age, it was made more than three years before Medline terminated Rogers. *See* Compl. [1]; Rogers Dep. [55-2] at 198-200. Even if the Court were to ignore the temporal remoteness of the comment, the single comment is also not sufficiently related to Medline's decision to terminate Rogers. The comment on its face neither reveals animus nor bears any relation to Rogers' subsequent termination years later. As such, this isolated comment is not sufficient to constitute direct evidence of discrimination, and standing alone, is insufficient to defeat summary judgment on a direct evidence theory of disparate treatment. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 371, 380 (5th Cir. 2010).

2. <u>Circumstantial evidence of discrimination</u>

Because Rogers has not presented direct evidence of Medline's discriminatory intent sufficient to overcome summary judgment, Pl.'s Resp. Mem. [70] at 18, the Court will turn to his claims based upon circumstantial evidence.

Where a plaintiff presents only circumstantial evidence of discriminatory animus, he must "negotiate the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green.*" *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff establishes a prima facie case of age discrimination by showing that: "(1) he was discharged; (2) he was qualified for the position; (3) he was [over 40 years old] at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Machinchick*, 398 F.3d at 350 (citation and quotation marks omitted); ADEA 29 U.S.C. § 621.

If a plaintiff makes a prima facie showing, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the termination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). The employer's burden is only "one of production, not persuasion: it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

If an employer provides evidence of a legitimate, nondiscriminatory reason for its termination, the presumption of discrimination created by the plaintiff's

prima facie case disappears and "the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination." *Reed*, 701 F.3d at 439.

   a.   Rogers' prima facie case and Medline's legitimate,
        nondiscriminatory reason for terminating Rogers

For purposes of this Motion [55], Medline has conceded that Rogers has met his prima facie burden to show a claim based on intentional age discrimination. Def.'s Mem. [56] at 17.  Thus, the Court's analysis begins with Medline's burden of producing evidence that it had a legitimate, nondiscriminatory reason for terminating Rogers.   Medline claims it terminated Rogers because of his failure to meet the clear expectations it set for him in his corrective action plan, which it imposed due to Rogers' consistent failure to meet sales goals and his receiving multiple customer complaints.  Def.'s Mem. [56] at 17-18.

To support its position, Medline has submitted evidence of Rogers' failure to meet quotas prior to or during the term of the corrective action plan, Ex. "A" [55-1] at 43-44; Rogers' Dep. [55-2] at 168-171, and of the corrective action form given to Rogers in March 2016 which informed him that he was the subject of multiple customer complaints regarding a lack of product knowledge, an unwillingness to ask the right questions, and a lack of urgency in resolving disputes, Ex. "S" [69-19]. Medline, through Mimms' Declarations, also presents Memorial Hospital's complaints regarding the level of Rogers' customer service.  Mimms' Decl. [55-10]; Mimms' Decl. [69-27]; *see* Ex. "U" [69-21].  Finally, Medline produces the Termination Summary outlining its reasons for terminating Rogers.  Ex. "U" [69-21].  Medline has thus satisfied its burden of production by identifying legitimate,

nondiscriminatory reasons for its termination decision. *See Goudeau v. Nat'l Oilwell Barco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015). The burden now shifts to Rogers to produce evidence of discriminatory intent. *See id.*

> b. <u>Rogers' evidence of pretext</u>

In determining whether a plaintiff has proffered sufficient evidence of pretext to proceed to trial, courts "consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Reeves*, 530 U.S. at 148-49). "The issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for [the plaintiff's] termination." *Sandstad v. CV Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 147-48.

Here, Rogers relies upon three items of circumstantial evidence to argue that a fact question exists on the issue of pretext: (1) Medline's termination of other salespersons over the age of forty; (2) Gallarelli's 2013 comment regarding Rogers' age; and (3) the falsity of Medline's legitimate, nondiscriminatory reasons. Pl.'s Resp. Mem. [70] 19-35.

> i. <u>Medline's termination of other salespersons</u>

Rogers offers as evidence of Medline's discriminatory animus that the

company terminated more than sixty sales representatives over the age of forty in the two years prior to Rogers' termination. Pl.'s Resp. Mem. [70] at 19; Ex. "G" [69-7]. Medline posits that because Rogers has abandoned his disparate-impact claim, this evidence is not properly before the Court. Def.'s Reply [74] at 13.

While "generalized statistical evidence will rarely rebut a particularized nondiscriminatory [reason for termination], statistical evidence may be probative of pretext in limited circumstances." *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1185 (5th Cir. 1996) (citing *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 124 (5th Cir. 1992) (considering statistical evidence of the number of employees a defendant laid off who were over the age of forty in a disparate treatment claim where the employer cited reduction in force)).[6] "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Id.*

Rogers offers no context for these terminations and only submits a list of all employees Medline terminated, which contains over one hundred names, along with a conclusory assertion, without explanation or evidence, that they are in substantially the same position as him. Pl.'s Resp. Mem. [70] at 19; Ex. "G" [69-7]. The only context for this evidence that is before the Court is Medline's statement that it employs twelve thousand persons. Def.'s Mem. [56] at 2; *see Walther*, 952 F.2d at 124 ("Particularly in age discrimination cases where innumerable groupings

---

[6] The Supreme Court has also noted that there should be no per se exclusion of other act evidence in disparate-treatment discrimination cases. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("[H]ad the District Court applied a *per se* rule excluding [other act] evidence, the Court of Appeals would have been correct to conclude that it had abused its discretion.").

of employees are possible according to ages and divisions within the corporate structure, statistics are easily manipulated and may be deceptive."). Based on the foregoing, this evidence is not sufficient by itself to demonstrate discriminatory animus on the basis of age.

ii. Gallarelli's 2013 comment

Rogers asserts that Gallarelli's statement at the 2013 meeting satisfies the "more flexible two-part test" applicable to comments that serve as circumstantial evidence of age discrimination.[7] Pl.'s Resp. Mem. [70] at 17-18; *see Reed*, 701 F.3d at 441. This comment may only serve as circumstantial evidence of age discrimination if it reveals, "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015) (quoting *Reed*, 701 F.3d at 441).

Here, Gallarelli's comment three years earlier regarding Rogers' age—that he did not know Rogers was "50 something years old," that Rogers did not "really look that old," and that Rogers was older than him—does not show discriminatory animus. Rogers Dep. [55-2] at 198. While the comment does relate to Rogers' age, a reasonable jury could not conclude that Gallarelli's comment, which was isolated

---

[7] When Briggs e-mailed Gallarelli that he and Halberg had decided to extend the corrective action plan, Gallarelli replied "And what if he makes the goals set for him given the [Prime Vendor] conversion? Not sure he deserves more time!" Ex. "I" [69-9] at 1. Although Rogers notes that this is evidence of pretext, he does not argue that, or explain how, this comment satisfies the two-part test. *See Pl.'s Resp. Mem.* [70]. While the comment, which was not made to Rogers, may reveal some animus, it does not show discriminatory animus.

and remote in time, demonstrated discriminatory animus. *See Squyres*, 782 F.3d at 236 (holding that occasionally calling a plaintiff "old man" in response to the plaintiff's use of "young guy," where the plaintiff did not take offense, failed to show discriminatory animus to raise a genuine issue of fact as to pretext). Gallarelli's comment was made in 2013, years before the institution of Rogers' first corrective action plan, and even viewed in the light most favorable to Rogers, shows only Gallarelli's surprise that Rogers was older than him. As such, it is insufficient to demonstrate discriminatory animus.

      iii.   <u>Rogers' argument that Medline's reasons for termination are unworthy of credence</u>

Rogers argues generally that Medline's purported reasons for terminating him, when measured by the record evidence, are pretext for age discrimination. Pl.'s Resp. Mem. [70] at 19-21. Proof that a defendant's explanation is false and unworthy of credence is "one form of circumstantial evidence that is probative of intentional discrimination" and can be "quite persuasive." *Reeves*, 530 U.S. at 147.

To show falsity, Rogers focuses primarily on the issue of customer complaints, arguing that he was not the subject of any complaints before Gallarelli and Briggs began to manage him, that he was not aware of any customer complaints until he was presented with the corrective action plan, and that Memorial Hospital did not request his termination despite Briggs' deposition testimony that Mimms said Memorial would expect a replacement if Rogers' performance did not improve. Rogers also argues that institution of the corrective action plan itself was pretext.

Rogers first asserts that Smith and Taylor, his previous managers, did not

recall any customer complaints regarding Rogers' performance except one that Smith attributed to a customer's last-minute ordering of a product. Smith Depo. [69-2] at 14-16; Taylor Decl. [69-3]. Medline does not dispute these facts but contends that the complaints which led to Rogers' termination occurred after Taylor and Smith left their management positions with the company. Def.'s Mem. [56] at 19 n.6; Def.'s Reply [74] at 7 n.9.

Rogers contends that Briggs' claim that Memorial "requested to have [Rogers] replaced," is false, Ex. "P" [69-16] at 46-47, because Mimms states in a Declaration that he "never requested that Medline terminate Ric Rogers [nor] threatened to cancel the Medline contract because of Ric Rogers," Mimms Decl. [69-4] ¶¶ 6-7; Pl.'s Resp. Mem. [70] at 25-26. Briggs' deposition testimony reflects that he clarified his statement that Mimms requested to have Rogers replaced. Ex. "P" [69-16] at 46-50. Specifically, Briggs testified that: "[T]hey either expected performance improvement or they said that they would accept a replacement." *Id.* at 47 ¶¶ 6-8. Briggs clarified: "They never said they demanded Rick be fired." *Id.* at 47 ¶¶ 22-23.

It is clear from his July 13, 2018, Declaration that Mimms met with Briggs in person and "expressed concerns about Mr. Rogers' following up and following through with issues concerning implementation of the prime vendor agreement." Mimms Decl. [55-10] ¶ 12; Mimms Decl. [69-4] ¶ 9 (indicating Mimms believed there was "room for improvement" regarding "follow-up and follow through"). While it is not clear to the Court based upon the record whether Mimms believed that asking for a replacement was not tantamount to requesting Rogers'

termination, "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Republic Ref. Co.*, 924 F.2d at 97.

Rogers also asserts that he was not aware of any customer complaints until he received the corrective action plan from Briggs, and that because Medline cannot produce documentation of these customer complaints, its reason is pretextual. Pl.'s Resp. Mem. [70] at 23-25. Medline counters that the corrective action plans and Briggs' deposition testimony regarding complaints from Biloxi Regional Hospital, Natchez Hospital, and a VA hospital serve as sufficient documentation. Def.'s Reply [74] at 5-6.

However, Rogers takes the position that these complaints were created only as a pretext for age discrimination and claims that Medline failed to produce "*any* customer complaints *at all* that express dissatisfaction toward Rogers or his service or attention to the accounts in his territory." Pl.'s Resp. Mem. [70] at 20-21. He relies on the absence of documented customer complaints in his personnel file, the lack of specificity regarding customer complaints, and the generic reasons for discharge that Briggs and Gallarelli provided in their deposition testimony. *Id.*

Prior to the implementation of the corrective action plan generally noting some complaints, the record is in fact barren of documented customer complaints. Other than Mimms' confirmed grievances, which occurred after Medline implemented the corrective action plan, *see* Mimms Decl. [55-10] [69-4], Medline has

not introduced any independent evidence of documented complaints Gallarelli or Briggs received prior to Rogers' discharge.

Rogers also seeks to undermine Medline's other reasons for his termination— that Rogers failed to meet sales quotas, failed to send weekly updates, failed to attend a one-on-one call, and received a customer complaint after imposition of the corrective action plan. Rogers has not disputed that Mimms complained to Briggs regarding Rogers' service, but argues only that the complaint was solicited. *Id.* at 31. Nor does he contest that he failed to attend the scheduled one-on-one call with Briggs, only asserting that it was a one-time issue. *Id.* at 31-32. Though Rogers posits that he sent weekly updates, he relies on a single e-mail the first week he was on corrective action to show that he complied with the plan's reporting expectation. *See id.* at 30-31. And the Termination Summary [69-21] states that Rogers "failed to consistently send updates," not that he never sent them. While Rogers does not dispute that he did not meet sales quotas for the years stated and did not meet the quotas or STAR expectations set out in the corrective action form, *see* Pl.'s Resp. Mem. [70] at 32-34, he maintains that STAR is not mandatory, and that Briggs' email indicating he was waiting until the 2015 numbers came out proves that Medline planned to terminate him.

Finally, Rogers argues that Medline created the corrective action plan itself as a pretext for discharging him. Briggs cites the January 2016 email that Gallarelli sent to Boyle, Halberg, and Briggs, noting that Rogers was not currently on a corrective action plan. Ex. "E" [69-5]. Gallarelli wrote: "[Briggs] was wanting

to wait until 2015 numbers come out (STAR/Quota) so we can properly draft a [corrective action plan.] . . . We have three months minimum so no harm at this time." *Id.* Rogers contends that this evinces a plan to put him on corrective action before he would be able to implement the multi-million-dollar prime vendor account with Memorial, which would likely allow him to exceed any quotas Medline set. Pl.'s Resp. Mem. [74] at 3-4.

A plaintiff's presentation of "[e]vidence demonstrating the falsity of the defendant's explanation . . . is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Sandstad*, 309 F.3d at 897 (citing *Reeves*, 530 U.S. at 147-48). A plaintiff need not introduce sufficient evidence that both the "employer's reason was false and that [the] employer's real reason was discrimination," *Reeves*, 530 U.S. at 140 (rejecting Fifth Circuit's pretext plus requirement), in order to defeat summary judgment. "Thus, the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus *or* the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897 (emphasis added).

While Rogers has introduced little evidence of discriminatory animus, for purposes of summary judgment he has both met his prima facie burden and called into question the veracity of Medline's legitimate nondiscriminatory reasons for his discharge. The Court is not persuaded that all of Rogers' arguments regarding pretext create questions of fact; however, viewed in totality and in the light most favorable to him, they are sufficient to create a fact question regarding whether

Medline's reasons for terminating him were false and therefore pretextual. Rogers has presented evidence that STAR quota is not mandatory, that Gallarelli and Briggs planned his corrective action plan prior to documenting any customer complaints, and that Medline did not fire him or place him on any form of corrective action for quota numbers significantly lower than his 2015 finish.[8]

Because Rogers has called into question the truth of Medline's legitimate, nondiscriminatory reasons for his termination, he has done enough to withstand Medline's Motion [55] for Summary Judgment. Medline's Motion [55] should be denied as to Rogers' disparate-treatment claims.

## III. <u>CONCLUSION</u>

Because Rogers has shown the existence of questions of material fact for resolution at trial regarding his disparate-treatment claim, summary judgment should be denied. However, summary judgment should be granted on Rogers' claim of disparate impact. To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Medline Industries, Inc.'s Motion [55] for Summary Judgment is **GRANTED IN**

---

[8] The Court has considered that Gallarelli's and Briggs' membership in Rogers' protected class, and the collective decision by Gallarelli, Halberg, and Briggs to terminate Rogers, all weigh against any inference that Medline discriminated against Rogers based on his age; however, they do not alter the result at summary judgment in light of Rogers' evidence of pretext. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 n.2 (5th Cir. 2007) (holding that that where a termination decision is made collectively, it is "less susceptible to influence by an[y] individual with retaliatory motive"); *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 783 (5th Cir. 2015) (holding that a decisionmaker's "membership in the same protected class as [plaintiff] bolsters the inference that age discrimination was not the reason for termination").

**PART AND DENIED IN PART**.  Plaintiff Richard K. Rogers' disparate-impact age discrimination claim is **DISMISSED WITH PREJUDICE**. Plaintiff Richard K. Rogers' disparate-treatment age discrimination claim will proceed.

**SO ORDERED AND ADJUDGED**, this the 18th day of January, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE